| | |
|---|---|
| REX T. GILBERT, JR., and <br> DANIELA L. GILBERT, <br>       Plaintiffs, <br>    v. <br> DEUTSCHE BANK TRUST COMPANY <br> AMERICAS, as Trustee for <br> RESIDENTIAL ACCREDIT LOANS, INC., <br> DAVID A. SIMPSON, P.C., Substitute Trustee, <br> RESIDENTIAL FUNDING, LLC, and <br> GMAC MORTGAGE, LLC, <br>       Defendants. | **ORDER** |

On September 14, 2009, Rex T. Gilbert, Jr., and Daniela L. Gilbert ("plaintiffs" or "Gilberts") filed suit in Hyde County Superior Court against Deutsche Bank Trust Company Americas ("Deutsche"), Residential Funding, LLC ("Residential Funding"), GMAC Mortgage, LLC ("GMAC"), and David A. Simpson, P.C. ("Simpson") (collectively "defendants"), seeking to rescind their mortgage loan [D.E. 1-1]. The Gilberts allege that when they obtained a mortgage loan from First National Bank of Arizona ("First National Arizona"), a non-party to this action, First National Arizona made various disclosure violations under the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601–1667f, and the Federal Reserve Board's Regulation Z, 12 C.F.R. § 226.1–.58. See Compl. ¶¶ 41–44, 47, 67–77.

The Gilberts allege that Deutsche, Residential Funding, and GMAC also violated TILA and Regulation Z, because Deutsche, as trustee for Residential Accredit Loans, Inc. Series 2006-QA6,

is the current owner and holder of the note and deed of trust and Deutsche did not provide copies of the right-to-rescind notice. See Compl. ¶¶ 2, 68–70, 75–77. Additionally, the Gilberts claim that defendants (1) violated North Carolina usury law, (2) engaged in "unfair and/or deceptive trade practices under [North Carolina General Statute] § 75-1.1," (3) engaged in "acts of debt collection in violation of [North Carolina General Statute] § 75-50 et. seq.," and (4) breached the mortgage-loan contract with plaintiffs. Id. ¶¶ 78–94. Furthermore, plaintiffs claim that Deutsche lacks authority to enforce the loan because the allonge under which Deutsche acquired its interest is defective. Id. ¶¶ 95–105.

Defendants removed the action to this court [D.E. 1] and move to dismiss the complaint for failure to state a claim upon which relief can be granted [D.E. 6]. As explained below, defendants' motion to dismiss is granted.

I.

In early 2006, the Gilberts had difficulty making required payments on their original mortgage loan and sought to refinance. Compl. ¶ 11. On May 5, 2006, Rex Gilbert borrowed $525,000 from First National Arizona to refinance the lien on the Gilberts' property in Hyde County, North Carolina ("subject property"). Id. ¶¶ 22, 31; Zeitz Aff. ¶¶ 5–6 & Exs. 1, 2, 3. In completing the transaction on May 5, 2006, Rex Gilbert signed a promissory note ("note") and an addendum to the note, and both of the Gilberts signed a deed of trust securing the $525,000 loan with the subject property. Zeitz Aff. ¶¶ 6, 7, 13 & Exs. 1–3; see Compl. ¶ 31. When the Gilberts obtained the loan, First National Arizona made various disclosures, including a "Truth in Lending Disclosure Statement," "Notice of Right to Cancel," "Variable Rate Mortgage Program Disclosure," "HUD-1 Settlement Statement," and "First Payment Letter." Zeitz Aff. ¶¶ 19–24 & Exs. 5–9; see Compl. ¶ 41.

2

First National Arizona thereafter transferred its interest in the mortgage loan to First National Bank of Nevada, also a non-party. Compl. Ex. 1; Zeitz Aff. ¶ 14 & Ex. 4. First National Bank of Nevada thereafter transferred its interest in the mortgage loan to Residential Funding Corporation. Zeitz Aff. ¶ 15; see id. Ex. 4; Compl. Ex. 1. Finally, Residential Funding Corporation sold its interest in the mortgage loan to Deutsche, as trustee for Residential Accredit Loans, Inc. Series 2006-AQ6. Compl. Ex. 1; Zeitz Aff. ¶¶ 16, 18 & Ex. 4.

Defendants are affiliated, in various ways, with the note and deed of trust associated with the Gilberts' mortgage loan. Deutsche, as trustee for Residential Accredit Loans, Inc. Series 2006-QA6, is the current owner and holder of the note and deed of trust. Zeitz Aff. ¶ 3; see Compl. ¶ 2. Residential Funding is the master servicer. See Compl. ¶ 4. GMAC is the subservicer. Zeitz Aff. ¶ 3; see Compl. ¶ 5. Deutsche appointed Simpson as substitute trustee of the deed of trust. See Compl. ¶ 3.

In 2008, plaintiffs defaulted on their mortgage-loan payments. See Compl. ¶¶ 2, 32; Zeitz Aff. ¶ 30 & Ex. 10 (payment history). Simpson, as substitute trustee of the deed of trust, filed a foreclosure action (09-SP-09) against the Gilberts in Hyde County Superior Court. See Compl. ¶¶ 2, 32.

On April 5, 2009, plaintiffs' counsel sent a letter to GMAC alleging various TILA and Regulation Z disclosure violations and requesting rescission of the loan agreement. Compl. Ex. 5, Letter from Katherine S. Parker-Lowe to Lauren S. Thurmond (Apr. 5, 2009). On April 24, 2009, GMAC's counsel responded that GMAC's review of the Gilberts' file revealed no disclosure violations. Compl. Ex. 6, Letter from Kathy Priore to Katherine Parker-Lowe (April 24, 2009). Accordingly, GMAC declined to rescind the Gilberts' loan agreement. Id.

On August 18, 2009, Hyde County Superior Court ordered the foreclosure sale of the subject

3

property. See Pls.' Notice of Appeal 1. On September 14, 2009, the Gilberts filed a suit in Hyde County Superior Court against defendants seeking to rescind their mortgage loan [D.E. 1-1]. The Gilberts allege that when they obtained the mortgage loan from First National Arizona, First National Arizona made various disclosure violations under TILA, 15 U.S.C. §§ 1601–1667f, and Regulation Z, 12 C.F.R. § 226.1–.58. See Compl. ¶¶ 41–44, 47, 67–77. The Gilberts claim that Deutsche, Residential Funding, and GMAC also violated TILA and Regulation Z, because ownership of the loan was ultimately transferred to Deutsche, as trustee for Residential Accredit Loans, Inc. Series 2006-QA6, and Deutsche did not provide copies of the right-to-rescind notice. See id. ¶¶ 2, 68–70, 75–77. Additionally, the Gilberts assert that defendants violated North Carolina law, including violating usury law, engaging in "unfair and/or deceptive trade practices," engaging in prohibited "acts of debt collection," and breaching the mortgage-loan contract with plaintiffs. See id. ¶¶ 78–94. Finally, plaintiffs allege that Deutsche lacks authority to enforce the note because the allonge under which Deutsche acquired its interest is defective. Id. ¶¶ 78–105.

On October 9, 2009, the Superior Court temporarily enjoined the foreclosure sale pending resolution of plaintiffs' TILA claims. See Gilbert v. Deutsche Bank Trust Co. Americas, No. 09-CVS-70 (Hyde Co. Super. Ct. Oct. 9, 2009) (order granting preliminary injunction and recognizing that Deutsche is the proper foreclosing party). The Superior Court also recognized that plaintiffs "did not carry their burden with respect to any of the claims that [Deutsche] was not the [proper] foreclosing party" and that the issue "ha[d] been determined in [a] Special Proceeding." Id. ¶ 2.

On October 13, 2009, defendants removed the action to this court [D.E. 1]. On October 14, 2009, defendants filed a motion to dismiss the complaint for failure to state a claim upon which relief can be granted [D.E. 6]. Plaintiffs responded in opposition [D.E. 22], and defendants replied [D.E. 23].

II.

In analyzing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted," a court must determine whether the complaint is legally and factually sufficient. See Fed. R. Civ. P. 12(b)(6); Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949–50 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (en banc); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). A court accepts all factual allegations in the complaint as true. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007). However, a court need not accept a complaint's legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement. See, e.g., Ashcroft, 129 S. Ct. at 1949–50; Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). Similarly, a court need not accept as true "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Ashcroft, 129 S. Ct. at 1949–50. Furthermore, in analyzing a Rule 12(b)(6) motion to dismiss, a court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc., 551 U.S. at 322.

Initially, plaintiffs allege that Deutsche lacks authority to enforce the note. Plaintiffs claim that the allonge under which Deutsche acquired its interest is defective because the endorsement from First National Bank of Nevada to Residential Funding Corporation is "not duly authorized" and the endorsement to Deutsche is in Deutsche's representative capacity as trustee, specifying no principal. Compl. ¶ 102.

After the Gilberts defaulted on their mortgage-loan payments in 2008, see id. ¶¶ 2, 32; Zeitz Aff. ¶ 30 & Ex. 10 (payment history), Simpson, as substitute trustee of the deed of trust, filed a

5

foreclosure action (09-SP-09) against the Gilberts in Hyde County Superior Court. See Compl. ¶¶ 2, 32. On August 18, 2009, Hyde County Superior Court ordered the foreclosure sale of the subject property. See Pls.' Notice of Appeal 1. On October 9, 2009, the Superior Court temporarily enjoined the foreclosure sale pending resolution of plaintiffs' TILA claims. See Gilbert, No. 09-CVS-70 (Hyde Co. Super. Ct. Oct. 9, 2009) (order granting preliminary injunction and recognizing that Deutsche is the proper foreclosing party) (unpublished). The Superior Court also recognized that plaintiffs "did not carry their burden with respect to any of the claims that [Deutsche] was not the [proper] foreclosing party" and that the issue "ha[d] been determined in [a] Special Proceeding." Id. ¶ 2.

Under North Carolina law, a court presiding over a foreclosure proceeding must decide whether the foreclosing party is the holder of the debt. See N.C. Gen. Stat. § 45-21.16. Specifically, at the outset of a foreclosure proceeding, before the clerk of court authorizes the "mortgagee or trustee to proceed under the instrument," the clerk of court must find, inter alia, the existence of (1) a "valid debt of which the party seeking to foreclose is the holder," and (2) a "right to foreclose under the instrument." Id. Here, the Hyde County Clerk of Court considered and decided these issues in Deutsche's favor. See Gilbert, No. 09-CVS-70, at ¶ 2 (Hyde Co. Super. Ct. Oct. 9, 2009).

Issues that "the clerk of court decides at a foreclosure hearing as to the validity of the debt and the trustee's right to foreclose are subject to res judicata and cannot be relitigated." Merrill Lynch Bus. Fin. Servs., Inc. v. Cobb, No. 5:07-CV-129-D, 2008 WL 6155804, at *3 (E.D.N.C. Mar. 18, 2008) (unpublished) (interpreting North Carolina law); Phil Mech. Constr. Co. v. Haywood, 72 N.C. App. 318, 322, 325 S.E.2d 1, 3 (1985). Rather, if dissatisfied with the clerk's determination, a party must appeal to the Superior Court within ten days. See N.C. Gen. Stat. § 45-21.16(d1); Phil Mech. Constr. Co., 72 N.C. App. at 322, 325 S.E.2d at 3. In this case, the clerk's judgment that

Deutsche may enforce the note has been affirmed. See Gilbert, No. 09-CVS-70 (Hyde Co. Super. Ct. Oct. 9, 2009) (order granting preliminary injunction and recognizing that Deutsche is the proper foreclosing party). Accordingly, res judicata bars plaintiffs from relitigating whether Deutsche has authority to enforce the note. See, e.g., Pension Benefit Guar. Corp. v. Beverley, 404 F.3d 243, 248 (4th Cir. 2005) (describing requirements needed to establish res judicata); Resolute Ins. Co. v. State of North Carolina, 397 F.2d 586, 589 (4th Cir. 1968) ("This case is a thinly veiled attempt to thwart the process of dispensing justice by relitigating matters which have been decided in a court of competent jurisdiction.").

Next, the court addresses plaintiffs' claims that Deutsche, Residential Funding, and GMAC violated TILA and Regulation Z. TILA requires creditors to make certain disclosures about loans and associated costs, to enable consumers "to compare more readily the various credit terms available," "avoid the uninformed use of credit," and avoid "inaccurate and unfair credit billing." 15 U.S.C. § 1601(a); see generally id. §§ 1601–1667f. The Federal Reserve Board, the agency which administers TILA, has adopted Regulation Z to implement TILA's mandates and methods of disclosure. See 12 C.F.R. § 226.1. Under TILA, if a loan is secured by a debtor's primary residence, "the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms . . . whichever is later." 15 U.S.C. 1635(a). Furthermore, "[t]he creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section." Id. Notice must be provided "on a separate document that identifies the transaction and . . . clearly and conspicuously discloses" the debtor's rights. 12 C.F.R. § 226.23(b)(1). A creditor's failure to comply with these provisions extends the debtor's right to rescind for up to three years following the transaction. See

15 U.S.C. § 1635(f); 12 C.F.R. § 226.23(a)(3). "Under § 1635(f) of the statute, this right of rescission 'shall expire' in the usual case three years after the loan closes or upon the sale of the secured property, whichever date is earlier." Beach v. Ocwen Fed. Bank, 523 U.S. 410, 411 (1998).

In Beach, the Supreme Court clarified that section "1635(f) completely extinguishes the right of rescission at the end of the 3-year period." Id. at 412. Indeed, the plaintiffs in Beach "concede[d] that any right they may have had to institute an independent proceeding for rescission under § 1635 lapsed ... three years after they closed the loan with the bank." Id. at 415. The Court explained that section 1635(f) goes "beyond" operating as a statute of limitation, by also "governing the life of the underlying right [to rescind]." Id. at 417. Congress' "manifest intent" is "that the Act permits no federal right to rescind, defensively or otherwise, after the 3-year period of § 1635(f) has run." Id. at 418–19 (recognizing that such an intent makes "perfectly good sense" because Congress "may well have chosen to circumscribe" the risk that "a statutory right of rescission [w]ould cloud a bank's title on foreclosure").

On May 5, 2006, the Gilberts closed the loan with First National Arizona. Zeitz Aff. ¶¶ 5–6 & Ex. 1; Compl. ¶¶ 22, 31. Thus, assuming, without deciding, that defendants violated TILA or Regulation Z, the Gilberts' right to rescind expired on May 5, 2009, over four months before they filed suit seeking to rescind the loan on September 14, 2009. Thus, plaintiffs' rescission claim fails.

In opposition to this conclusion, the Gilberts argue that they exercised the right to rescind when they sent their April 5, 2009 letter to GMAC, alleging various TILA and Regulation Z disclosure violations and requesting rescission of the loan agreement. See Pls.' Mem. Opp'n 8–11; see also Compl. Ex. 5, Letter from Katherine S. Parker-Lowe to Lauren S. Thurmond (Apr. 5, 2009). The Fourth Circuit, however, has held that "unilateral notification of cancellation does not automatically void the loan contract." Am. Mortgage Network, Inc. v. Shelton, 486 F.3d 815, 821

8

(4th Cir. 2007). "Otherwise, a borrower could get out from under a secured loan simply by claiming TILA violations, whether or not the lender had actually committed any." Id. (quotation and alteration omitted). The "security interest becomes void when the obligor exercises a right to rescind that is available in the particular case, either because the creditor acknowledges that the right of rescission is available, or because the appropriate decision maker has so determined." Id. (quotation omitted). "Until such decision is made, the borrowers have only advanced a claim seeking rescission." Id. (quotation and alteration omitted). Thus, when a mortgagee receives such a claim, rescission is not "automatic." See id. at 820–21 ("Clearly it was not the intent of Congress to reduce the mortgage company to an unsecured creditor or to simply permit the debtor to indefinitely extend the loan without interest.").

Plaintiffs' April 5, 2009 letter merely requested rescission. Such a request does not constitute the exercise of the right of rescission. See id. Furthermore, plaintiffs waited to file this action until September 14, 2009, after their right to rescind had expired. Cf. Beach, 523 U.S. at 417 (recognizing that section 1635 "talks not of a suit's commencement but of a right's duration"). Accordingly, plaintiffs' claim for rescission under TILA and Regulation Z fails to state a claim upon which relief can be granted.

Alternatively, plaintiffs' rescission claim fails for another reason. TILA defines a "creditor" as "only . . . a person who both (1) regularly extends . . . consumer credit . . . and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement." 15 U.S.C. § 1602(f). Similarly, Regulation Z defines a "creditor" as "[a] person who regularly extends consumer credit . . . and to whom the obligation is initially payable, either on the face of the note or contract, or by agreement when there is no note or contract." 12 C.F.R. § 226.2(a)(17)(i) (footnote

omitted). Defendants, however, are not "creditor[s]" according to section 1602(f) and Regulation Z, because defendants are not "the person to whom the debt arising from [the mortgage loan] is initially payable" on the face of the loan documents. See Cetto v. LaSalle Bank Nat'l Ass'n, 518 F.3d 263, 269–73 (4th Cir. 2008); 15 U.S.C. § 1602(f); 12 C.F.R. § 226.2(a)(17)(i). The loan documents show that the Gilberts' mortgage loan was initially payable to First National Arizona, not to defendants. See Compl. Exs. 1, 2. Accordingly, the Gilberts have failed to state a claim against defendants under TILA or Regulation Z.[1]

Plaintiffs also assert usury-law violations under Chapter 24 of the North Carolina General Statutes because "defendants [intentionally] charged and collected interest in excess of the agreed rate or limits set forth under [North Carolina law]." Compl. ¶ 79. In support, plaintiffs allege that First National Arizona gave plaintiffs an inaccurate payment schedule, including a higher finance charge than in the note or addendum to the note. See id. ¶¶ 39–41, 83; see also id. Exs. 2, 3, 4.

To state a usury claim under Chapter 24, "plaintiffs are required to show that within two years of filing their complaint defendant[s] charged or plaintiffs paid a usurious fee." Shepard v. Ocwen Fed. Bank, FSB, 361 N.C. 137, 140, 638 S.E.2d 197, 199 (2006); see N.C. Gen. Stat. § 1-53(2), (3). Plaintiffs fail to allege facts sufficient to support such a claim, and fail to identify what provision of the usury laws defendants allegedly violated. Cf. Shepard, 361 N.C. at 138–41, 638 S.E.2d at 198–200. Accordingly, plaintiffs' usury claim is dismissed.

Next, plaintiffs allege that defendants engaged in unfair trade practices under section 75-1.1.

---

[1] Moreover, as for plaintiffs' claim for monetary damages under TILA and Regulation Z, TILA imposes a one-year statute of limitations. See 15 U.S.C. § 1640(e). The one-year limitations period begins when the alleged violation occurs. See id. The Gilberts contend that the alleged disclosure violations occurred at closing on May 5, 2006, Compl. ¶¶ 22, 31, 41–44, 47, 67–77, but the Gilberts filed suit on September 14, 2009. Accordingly, the one-year statute of limitations bars the Gilberts' claim for monetary damages under TILA and Regulation Z.

See Compl. ¶¶ 81–83. In support, plaintiffs rely on their factual allegation about First National Arizona's inaccurate payment schedule. Id. ¶¶ 41–42. Specifically, plaintiffs rely on their contention that the disclosed payment schedule reflects a higher finance rate than in the note or the addendum to the note. See Compl. ¶¶ 39–41 & Exs. 2, 3, 4.

North Carolina's unfair-and-deceptive practices act provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. Gen. Stat. § 75-1.1(a); see White v. Thompson, 364 N.C. 47, 51, 691 S.E.2d 676, 679 (2010). Plaintiffs fail to explain how defendants deceived plaintiffs when First National Arizona allegedly gave plaintiffs an inaccurate payment schedule, or how First National Arizona's alleged disclosure of a higher finance charge caused harm to plaintiffs. See Compl. ¶¶ 39–41, 83; see also id. Exs. 2, 3, 4; cf. First Union Nat'l Bank v. Brown, 166 N.C. App. 519, 533, 603 S.E.2d 808, 818–19 (2004). Accordingly, plaintiffs fail to allege facts sufficient to support their claim against defendants for unfair trade practices. See, e.g., Ashcroft, 129 S. Ct. at 1949–50. Thus, their claim is dismissed.

Next, plaintiffs assert that defendants engaged in prohibited "acts of debt collection" under N.C. Gen. Stat. §§ 75-50 et. seq., because (1) defendants communicated with plaintiffs after being notified that plaintiffs are represented by counsel, (2) defendants "falsely represent[ed] the character, extent or amount of debt" because defendants "attempt[ed] to collect money" plaintiffs owed on the debt "after plaintiffs forwarded their notice of rescission," and (3) Deutsche lacks authority to enforce the note and foreclose on the subject property. Compl. ¶¶ 84–89. As discussed, plaintiffs' allegation that their letter of April 5, 2006, automatically rescinded their mortgage-loan agreement lacks merit. See Shelton, 486 F.3d at 820–21. Furthermore, as discussed, a court of competent jurisdiction has decided that Deutsche has authority to enforce the note. As such, plaintiffs have

11

failed to allege facts sufficient to show that defendants engaged in unlawful conduct, in collecting the mortgage-loan payments or otherwise. See, e.g., Ashcroft, 129 S. Ct. at 1949–50. Thus, their claim is dismissed.

Finally, plaintiffs allege that defendants breached the mortgage-loan contract that plaintiffs executed with First National Arizona. Compl. ¶¶ 90–94. In support, plaintiffs re-allege their claim that Deutsche lacks authority to enforce the note. Id. ¶¶ 102–03. As discussed, plaintiffs may not relitigate that issue in this case. Thus, their claim is dismissed.

III.

As explained, defendants' motion to dismiss [D.E. 6] is GRANTED.

SO ORDERED. This 7 day of July 2010.

JAMES C. DEVER III
United States District Judge

12