IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
NO. 4:09-CV-181-D

REX T. GILBERT, JR. and DANIELA L.
GILBERT,

          *Plaintiffs*,

v.

DEUTSCHE BANK TRUST COMPANY
AMERICAS, AS TRUSTEE FOR
RESIDENTIAL ACCREDIT LOANS, INC.,
DAVID A. SIMPSON, P.C., SUBSTITUTE
TRUSTEE, RESIDENTIAL FUNDING,
LLC, GMAC MORTGAGE, LLC and
OCWEN LOAN SERVICING, LLC,

          *Defendan*ts.

---

**DEFENDANT DEUTSCHE BANK TRUST COMPANY AMERICAS, AS TRUSTEE FOR
RESIDENTIAL ACCREDIT LOANS, INC. SERIES 2006-QA6'S MEMORANDUM IN
OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

      **NOW COMES** Defendant Deutsche Bank Trust Company Americas, as Trustee for

Residential Accredit Loans, Inc. Series 2006-QA6[1] ("Deutsche Bank" or "Defendant"), by and

through counsel of record, and respectfully submit this memorandum in opposition to Plaintiffs

Rex T. Gilbert, Jr., and Daniela L. Gilbert's ("Plaintiffs" or "the Gilberts") motion for partial

summary judgment ("Motion for Partial Summary Judgment").

---

[1] The Gilberts' First Amended Complaint incorrectly names Deutsche Bank as Deutsche Bank
Trust Company Americas, as Trustee for Residential Accredit Loans, Inc.

1

# I. NATURE OF THE CASE AND FACTS

On May 5, 2006, Plaintiffs borrowed $525,000.00 from the First National Bank of Arizona (the "Loan") and refinanced a prior mortgage loan on their property, 134 West End Road, Ocracoke, North Carolina 27960 (the "Property"). (Am. Compl. ¶ 9 and Ex. 2, ECF No. 74.) As part of the closing of the Loan, Plaintiffs acknowledged "reading and receiving a complete copy" of a Truth in Lending Disclosure Statement (the "TIL Statement") on May 5, 2006. (Am. Compl. Ex. 4.)

GMAC Mortgage Corporation approved Plaintiffs for a loan modification in 2008. The loan modification required that Plaintiffs "make a lump sum payment of $8,051.40 by 1 October 2008." (Am. Compl. ¶ 63.) According Plaintiffs' own complaint, "Plaintiffs were unable to make the lump sum payment required to qualify for the loan modification." (*Id.* ¶ 64.)

In 2008, Plaintiffs defaulted on their loan payments. *Gilbert v. Residential Funding LLC*, 678 F.3d 271, 274 (4th Cir. 2012). In 2009, David A. Simpson, P.C., as Substitute Trustee, brought a foreclosure suit ("State Foreclosure Action"). *Id.* On June 17, 2009, the Clerk of the Hyde County Superior Court ordered the foreclosure sale of the Property; this order, however, was reversed by the North Carolina Court of Appeals on May 3, 2011. *Id.* While the state court appeal was pending, Plaintiffs filed a separate suit, seeking to "rescind" the mortgage loan transaction, while simultaneously retaining any money they received as part of the Loan. After Plaintiffs' Complaint was dismissed on July 7, 2010, and then reinstated by the United States Court of Appeals for the Fourth Circuit on May 3, 2012, (ECF No. 55), Plaintiffs filed their First Amended and Restated Complaint (the "First Amended Complaint") on September 15, 2015. (First Am. Compl., ECF No. 74.)

On August 6, 2015, this Court issued a Scheduling Order, requiring discovery to be completed by April 15, 2016, and all potentially dispositive motions to be completed by May 13, 2016. (Scheduling Order, ECF No. 70.) On April 24, 2016, Plaintiffs filed a motion to amend their First Amended Complaint. On May 2, 2016, Plaintiffs filed a motion to extend the deadlines in the scheduling order (including the dispositive motion deadline) by sixty (60) days. On May 25, 2016, this Court denied both motions, explaining that "the loan at issue in this case closed in May 2006," "the Gilberts have had the evidence underlying their proposed new TILA claim for years," and "[t]his long-pending case needs resolution." (Order, ECF No. 108.)

## II.   STANDARD OF REVIEW

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986). Summary judgment is not a "disfavored procedural shortcut," but an important mechanism for filtering out "claims and defenses [that] have no factual basis." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Id.* at 232.

## III.   ARGUMENT

### A.   Plaintiffs' Motion for Partial Summary Judgment is Untimely.

Plaintiffs' Motion for Partial Summary Judgment should be denied because it is untimely. On August 6, 2015, this Court issued its Scheduling Order, requiring discovery to be completed by April 15, 2016, and all potentially dispositive motions to be completed by May 13, 2016. (Scheduling Order, ECF No. 70.) Plaintiffs filed a Motion for Extension of Time (ECF No. 96) on May 2, 2016, which this Court denied on May 25, 2016, noting that "[t]his long-pending case needs resolution" (ECF No. 108). Plaintiffs filed their Motion for Partial Summary Judgment three

3

days after the dispositive motion deadline, on May 16, 2016. (ECF No. 104.) Accordingly, Plaintiffs' Motion for Partial Summary Judgment is untimely and should be denied.

**B.      Plaintiffs' Motion for Partial Summary Judgment Relies Upon Allegations Not Made in their First Amended Complaint.**

Plaintiffs' Motion for Partial Summary Judgment should be denied because it relies upon allegations regarding the amount financed that do not appear in their First Amended Complaint. Instead, Plaintiffs filed a Motion to Amend their First Amended Complaint (ECF No. 95.), which this Court denied on May 25, 2016, (ECF No. 108) explaining that Plaintiffs had failed to demonstrate "good cause" to amend their First Amended Complaint. Thus, Plaintiffs' Motion for Partial Summary Judgment should be denied as it is premised upon a proposed amendment that this Court denied.

**C.      Plaintiffs are Not Entitled to Judgment on their TILA Claim for an Understated Amount Financed.**

Plaintiffs are not entitled to judgment on their TILA claim because they misconstrue applicable law. Plaintiffs argue that any error in the amount financed, whether understated or overstated, is a violation of TILA and entitles them to judgment as a matter of law. (Pls.' Mem. Supp. Summ. J. ¶ 8 ("Here where the underdisclosure of the amount financed was wrong, in and of itself, there is no tolerance.").) Thus, while Plaintiffs and Defendant both agree that the amount financed was underdisclosed and that the Loan was secured by real property, the parties do not agree on the law.

Defendant relies upon 12 C.F.R. § 226.18(d)(1)[2] for the rule that disclosures affected by the finance charge include the amount financed and an understatement of the amount financed is not a TILA violation:

> In a transaction secured by real property or a dwelling, the disclosed finance charge and other disclosures affected by the disclosed finance charge (***including the amount financed*** and the annual percentage rate) shall be treated as accurate if the amount disclosed as the finance charge:
>
> (i)     Is understated by no more than $100; or
> (ii)    ***Is greater than the amount required to be disclosed***.

(Emphasis added.)

Plaintiffs argue that this rule applies only when the underdisclosure of the amount financed "is affected by the underdisclosure of the finance charge."[3] (Pls.' Mem. Supp. Summ. J. ¶ 8.) Plaintiffs fail to recognize, however, that the amount financed is necessarily affected by the finance charge and cannot be calculated in isolation. The amount financed and the finance charge are inversely related -- when one increases, the other decreases. The lender has only two classification options for closing charges -- a closing charge is either included in the amount financed or in the finance charge. If a lender adds a charge to the finance charge in error (thereby overstating the finance charge), it necessarily understates the amount financed.

---

[2] 12 C.F.R. § 226.23(g) contains similar language stating that an overstatement of the finance charge is considered accurate.

[3] In their memorandum in support of their Motion for Partial Summary Judgment, Plaintiffs cite 15 U.S.C. § 1638(a)(2A), which outlines the calculation of the amount financed. 15 U.S.C. § 1638(a)(2A), however, states that the amount financed is computed by adding certain charges that are not part of the finance charge and subtracting certain charges that are part of the finance charge. By this very definition, the amount financed is necessarily affected by the treatment and categorization of the finance charges.

5

Case law supports this inverse relationship. "If a lender understates the amount financed, it effectively overstates the finance charge because the amount financed and the finance charge are inversely related." *Peterson v. Spectra Fin., Inc*., Civil No. 06–3796, 2007 WL 967334, at *3 (D. Minn. Mar. 29, 2007). Likewise, "[t]he amount financed disclosure is a disclosure affected by the finance charge because an amount not included in the finance charge must be included in the amount financed disclosure" *VanDenBroeck v. Commonpoint Mortg. Co.,* 22 F.Supp.2d 677, 688 (W.D. Mich. 1998) (internal quotation marks omitted). Plaintiffs have provided no citation of authority for their argument that there is a tolerance for an understatement of the amount financed in a real estate transaction in some situations but no tolerance in other situations. Accordingly, Plaintiffs are not entitled to the rescission they seek as a result of the understatement of the amount financed. *See Ebbighausen v. JP Morgan Chase Bank, N.A.,* No. CIV. 10-3120 JRT/LIB, 2013 WL 53836, at *5 (D. Minn. Jan. 3, 2013) ("There is no right to rescission under TILA where the lender understates the amount financed and thereby overstates the finance charge.").

**D.   Defendant Is Not Liable for TILA Violations Not Apparent on the Face of the Documents Assigned.**

Plaintiffs argue that Defendant, as assignee of the Loan, is liable for the lender's alleged TILA disclosure error because "the violation was apparent from the face of the disclosure statement and other documents assigned," but do not provide any explanation as to why or how the alleged error was apparent from the face of the documents. (Pls.' Mem. Supp. Summ. J. ¶ 9.) While Defendant's expert did not dispute the amount financed as calculated by Plaintiffs' expert, material facts are in dispute that must be decided in order to determine whether the alleged discrepancy in the amount financed was apparent on the face of the documents provided.

15 U.S.C. § 1638(a)(2A) instructs lenders how to calculate the amount financed. As stated in § 1638(a)(2A)(ii), the lender must include charges that are not part of the finance charge or the

6

principal amount of the loan and that are financed by the consumer, including charges excluded from the finance charge pursuant to § 1605. Section 1605 states that the finance charge must not include fees and amounts charged by third party closing agents "if the creditor does not require the imposition of the charges or the services provided and does not retain the charges." 15 U.S.C. § 1605(a). Plaintiffs do not attempt to explain how the assignee Defendant would have been able to determine, from the face of the TILA disclosure statement, whether the originating lender retained any such charges or required the imposition of such charges as a condition to making the Loan. Resolving this issue requires findings of fact related to the lender's policies and procedures, none of which have been addressed by Plaintiffs. Plaintiffs' Motion for Partial Summary Judgment should be denied on this basis.

Moreover, 15 U.S.C. § 1641(a) states that the alleged error must be apparent on the face of the disclosure statement or "other documents assigned." While Plaintiffs argue that the alleged error was apparent in "reference to the disclosure statement and the HUD-1 Settlement Statement," they offer no assertion or explanation that the HUD-1 Settlement Statement was "assigned" to the Defendant. There are material issues of fact in dispute related to the legal issue of whether the HUD-1 Settlement Statement was assigned to the Defendant and, whether it should therefore be considered when determining whether any error was apparent of the face of the documents. "Section 1641(a) recites 'other documents assigned,' not 'other documents transferred' or 'other documents.' If the other document is 'not assigned' it does not fall under the statutory definition. A document transferred but not assigned cannot qualify even under a liberal construction of the statute." *Ramadan v. Chase Manhattan Corp.,* 229 F.3d 194, 198 (3d Cir. 2000). Plaintiffs have provided no record evidence that the HUD-1 Settlement Statement was transferred, let alone assigned, to the Defendant. Thus, Plaintiffs' argument rests solely on the TILA disclosure

statement, which provides absolutely no details of the individual charges that were to be used to compute the amount financed and the finance charge. Plaintiffs offer no explanation as to how an assignee could determine the accuracy of the computation of the amount financed without reference to the constituent amounts. Accordingly, Plaintiffs' Motion for Partial Summary Judgment should be denied.

**E.      Plaintiffs Must Tender the Loan Proceeds if Rescission is Granted**

According to the Court of Appeals for the Fourth Circuit, "The effect of a rescission of an agreement is to put the parties back in the same position they were in prior to the making of the contract." *Jones v. Saxon Mortgage, Inc.*, 537 F.3d 320, 326 (4th Cir. 1998). When rescission occurs, the contract at issue is declared to be non-existent, and both parties are placed in the position they would have been if the contract had never been executed. *See Baker v. Bank of Am., N.A.*, No. 5:13-CV-92-F, 2014 WL 298909, at *4 (E.D.N.C. Jan. 27, 2014) (explaining that full rescission "contemplates a full unwinding of the transaction and a return to the status quo prior to the transaction"). "Thus, under the plain language of the first sentence of § 1635(b), the creditor's security interest does not become void until 'such a rescission' has been fully accomplished." *Id.* Here, Plaintiffs, who seek to rescind the contract, must "disgorge the fruits of the bargain". *Id.* at 1 n.1. Plaintiffs have failed to show why they are entitled to judgment as a matter of law without tendering the loan amount to Deutsche Bank, less any payments, interest, and finance charges.

Plaintiffs appear to argue that Defendant ignored their rescission notice, and that this excuses Plaintiffs from their duty to proffer or tender the loan proceeds. (*See* Pls.' Mem. Supp. Summ. J. ¶ 10.) As an initial matter, Plaintiffs' April 5, 2009, rescission letter sets forth five alleged grounds for rescission, none of which include the understatement of the amount financed and all of which appear to have been abandoned by Plaintiffs. (Am. Compl. Ex. 5, ECF No. 74.) Plaintiffs

fail to explain how Defendant should have determined that Plaintiffs' grounds for rescission was an understatement of the amount financed particularly when Plaintiffs themselves failed to assert this until their attempts to amend their complaint a second time. Finally, Defendant's letter in response to Plaintiffs' rescission request states that GMAC Mortgage, LLC, reviewed Plaintiffs' loan file and found no basis to conclude that there were grounds for rescission. (Am. Compl. Ex. 6, ECF No. 74.) While Plaintiffs characterize this response as ignoring their request for rescission, the plain language of the letter states that a review was conducted. Thus, there is a dispute over material facts central to Plaintiffs' argument, and their Motion for Partial Summary Judgment should be denied.

Because one of the goals of rescission is to return the parties to the positions they held prior to entering into the transaction, courts have the power at any time during the rescission process to impose equitable conditions to insure that consumers meet their obligations. Such equitable remedies, however, require that this Court weigh the equities, and this necessarily entails a hearing on the facts. In fact, courts have required borrowers to demonstrate their ability to return the borrowed funds to the lender at either the 12(b) stage or no later than the summary judgment stage. *See Moseley v. Countrywide Home Loans, Inc.*, No. 7:09-CV-210-FL, 2010 WL 4481782, at *4 (E.D.N.C. Sept. 30, 2010) *report and recommendation adopted,* No. 7:09-CV-210-FL, 2010 WL 4484566 (E.D.N.C. Oct. 26, 2010); *Miranda v. Wells Fargo Bank, N.A.*, 490 F. App'x 612, 613 (4th Cir. 2012). Therefore, should this Court determine that the equitable remedy of rescission is necessary, the court would then need to weigh the facts to determine the nature of the equitable remedy in this matter.

## IV.     CONCLUSION

Premises considered, Defendant respectfully requests that this Court deny Plaintiffs' Motion for Partial Summary Judgment.


RESPECTFULLY SUBMITTED, this the 3rd day of June, 2016.


**BRADLEY ARANT BOULT CUMMINGS LLP**


/s/ Mark Wierman
Mark Wierman (NC Bar No. 37134)
Amy E. Puckett (N.C. Bar No. 43142)
Bank of America Corporate Center
100 N. Tryon Street, Suite 2690
Charlotte, NC 28202
Telephone: (704) 338-6000
Fax: (704) 332-8858
E-mail: mwierman@babc.com

*ATTORNEY FOR DEFENDANT DEUTSCHE BANK TRUST COMPANY AMERICAS AND OCWEN LOAN SERVICING, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 3, 2016, I electronically filed the foregoing with the Clerk of

the Court using the CM/ECF system which will send notification of such filing to:

Kathryn Parker-Lowe
35 Miss Elecia Lane, Suite 101
P.O. Box 730
Ocracoke, North Carolina 27960
*ATTORNEYS FOR PLAINTIFFS*

and I hereby certify that I have mailed the document to the following non CM/ECF

participant:

David A. Simpson
501 Minute Lane, Suite 104A
Charlotte, NC 28217
*CO-DEFENDANT*

s/Mark S. Wierman